# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2110 | **DATE** | 7/7/2010 |
| **CASE TITLE** | M et al vs. Board of Education of the City of Chicago | | |

**DOCKET ENTRY TEXT**

The Court grants in part and denies in part both Defendant's and Plaintiffs' motions for summary judgment [13][16]. The Court, in its discretion, awards Plaintiffs $73,861.03 in attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B) and dismisses this lawsuit in its entirety. All pending dates and deadlines are stricken.

■[ For further details see text below.]

Notices mailed by Judicial staff.
*Mail AO 450 form.

## STATEMENT

On April 6, 2010, Plaintiffs Matthew M., a minor, and Mark M. and Julie M., individually and as parents and next friend of Matthew ("Plaintiffs"), filed the present lawsuit against Defendant Board of Education of the City of Chicago, District 299 (the "District") for attorney's fees and costs pursuant to the Individuals with Disabilities Education Act ("IDEA"). *See* 20 U.S.C. § 1415(i)(3)(B). Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court grants in part and denies in part both the District's and Plaintiffs' motions for summary judgment. The Court, in its discretion, awards Plaintiffs $73,861.03 in attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B) and dismisses this lawsuit in its entirety.

### BACKGROUND

Matthew is a 10 year-old boy who has cognitive impairments, physical disabilities, and autism. (R. 17-1, Pls.' Rule 56.1 Stmt. Facts ¶ 1.) His school district of residence is Chicago Public School ("CPS") District No. 299. (*Id.*) At the time of the due process hearing at issue in this lawsuit, Matthew attended a class for children with severe or profound cognitive impairments at Christopher Elementary School in Chicago. (*Id.*; R. 22-1, Def.'s Rule 56.1 Stmt. Facts ¶ 2.)

| | Courtroom Deputy Initials: | KF |
|---|---|---|

In December 2002, the District determined that Matthew was eligible for special education services at his initial Individualized Education Program ("IEP") meeting. (Pls.' Stmt. Facts ¶ 8.) The District specifically determined that Matthew was eligible for special education services based on his severe cognitive impairment, speech/language impairment, and his physical disability. (*Id*.) Matthew attended a CPS Early Childhood program from age three until age eight and then transferred to Christopher Elementary School. (*Id.* ¶ 7.)

From 2006-08, Matthew's parents arranged for private evaluations, including Dr. Joyce Hopkins' August 2007 evaluation. (*Id.* ¶ 9.) In her evaluation, Dr. Hopkins reported that Matthew would benefit from an individualized applied behavioral analysis ("ABA") approach to reduce his repetitive behavior and teach him more adaptive self-help and social skills. (*Id*.) On November 19, 2007, the District convened an IEP meeting that was attended by Dr. Hopkins, who presented her recommendations and written report. (*Id.* ¶ 10.) Meanwhile, Matthew's parents began – at their own expense – a home-based ABA program in June 2008 for four to six hours a week. (*Id.* ¶ 11.) After a September 24, 2008 IEP meeting, the District offered to provide Matthew with an ABA program for twenty minutes a day using CPS personnel who were not trained in the ABA approach. (*Id.* ¶ 13.)

On November 4, 2008, Dr. Hollie Sobel conducted a psychological evaluation of Matthew and reported that Matthew should receive continued ABA therapy. (*Id.* ¶ 14.) Dr. Sobel opined that the District did not properly address Matthew's self-stimulatory behavior and recommended placement in a non-public school setting. (*Id*.) On December 14, 2008 and January 14, 2009, the District conducted an IEP meeting to address Dr. Sobel's report. (*Id.* ¶ 15.) At that meeting, it was established that the CPS staff still did not have the proper ABA training. (*Id*.)

On or about January 1, 2009, Plaintiffs filed a written request for a due process hearing contesting the appropriateness of the IEPs the District had developed for Matthew and the appropriateness of the services the District provided under the IEPs. (Def.'s Stmt. Facts ¶ 6.) In their written request, Plaintiffs sought the following relief:

- A determination that the acts and omissions describe a failure by the District to provide Matthew with a free appropriate public education ("FAPE") between January 2007 through the present.

- Placement in an Illinois State Board of Education ("ISBE") approved private therapeutic facility that would provide for Matthew's need for an educational placement program and related services based on an intensive, systematic, and research-based approach.

- The maximum award possible for compensatory education services to address the District's failure to provide an educationally and functionally appropriate education plan for Matthew, including, but not limited to, reimbursement for the ABA therapy provided to Matthew at home and paid for by his parents.

- Any additional relief that the hearing officer deemed appropriate.

(*Id*. ¶ 7; Pls.' Stmt Facts ¶ 17.)

The hearing officer commenced the due process hearing on May 26, 2009 and continued it on May 28, 29, July 1, 2, and 14, 2009. (Def.'s Stmt. Facts ¶ 8.) On September 21, 2009, the hearing officer ordered that:

- Matthew be placed at the Chicago Autism Academy for the 2009-10 school year, which is an ISBE-approved private therapeutic school providing a full-day year-round educational program with intensive educational and therapeutic services to address Matthew's core deficits in the areas of behavior, functional independence, functional communication, and social skills.

- Transportation to and from the Chicago Autism Academy at no cost to the parents.

(*Id.* ¶ 10; Pls.' Stmt. Facts ¶ 22.)

The hearing officer also ordered an additional provision of two years of compensatory education at the Chicago Autism Academy and reimbursement for all expenses incurred by Matthew's parents for the home-based programs, including the ABA program. (Def.'s Stmt. Facts ¶ 10.) In addition, the hearing officer ordered therapeutic recreation services for Matthew. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be
viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse party to "set out specific facts").

## ANALYSIS

### I. Statute of Limitations

The District first argues that Plaintiffs' lawsuit for attorney's fees under the IDEA is untimely. Under Section 1415(i)(3)(B) of the IDEA, the Court has discretion to award reasonable attorney's fees to parents who are the prevailing parties in the state administrative proceedings. *See Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.,* 417 F.3d 704, 708 (7th Cir. 2005); *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.,* 356 F.3d 798, 804 (7th Cir. 2004). The statute of limitations applicable to attorney's fees claims under Section 1415(i)(3)(B) is 120 days and accrues on the date that the due process hearing officer's decision becomes final. *See Dell v. Board of Educ. Twp. High Sch. Dist. 113,* 32 F.3d 1053, 1058-59 (7th Cir. 1994); *McCartney C. by Sara S. v. Herrin Cmty. Unit Sch. Dist. No. 4,* 21 F.3d 173, 175 (7th Cir. 1994). The hearing officer's decision becomes final when either: (1) the 120 days that the school district has to challenge the hearing officer's decision has elapsed; or (2) if the school district challenges the decision, 120 days after the judicial decision upholding the hearing officer's decision has become final. *See Dell,* 32 F.3d at 1063; *McCartney,* 21 F.3d at 175. As the Seventh Circuit explains, until the judicial decision becomes final "upon exhaustion of all judicial remedies by the school district, the parent does not know whether she has any claim to attorney's fees," therefore, "the filing of a lawsuit to obtain those fees would be premature until then." *See McCartney,* 21 F.3d at 175; *see also Justin*

*B. v. Laraway Cmty. Consol. Sch. Dist.*, 03 C 5462, 2004 WL 1673043, at *2 (N.D. Ill. July 23, 2004).

In the present matter, the hearing officer issued his decision on September 21, 2009. The deadline for the District to challenge the September 21, 2009 decision in state or federal court was 120 days after that date, specifically, January 19, 2010. *See Dell,* 32 F.3d at 1056-57; *McCartney,* 21 F.3d at 175. Because the District did not challenge the hearing officer's decision, the hearing officer's decision became final on January 19, 2010. *See Dell,* 32 F.3d at 1063; *McCartney,* 21 F.3d at 175. Plaintiffs then had 120 days from that date to file their judicial claim for attorney's fees, namely, May 19, 2010. *See McCartney,* 21 F.3d at 175. Plaintiffs filed the present attorney's fees lawsuit on April 6, 2010, which was well within the 120 day statute of limitations. *See Dell,* 32 F.3d at 1063; *McCartney,* 21 F.3d at 175.

Despite the timely filing of this lawsuit, the District argues that because Plaintiffs were on notice by at least October 21, 2009 that Matthew would be enrolled in the Chicago Autism Academy, the 120 day limitations period began to run on that date. The District specifically argues that to "hold any other way would be to thwart the Seventh Circuit's concern for judicial economy." (R. 14-1, Def.'s Summ. J. Brief, at 5-6.) The District's argument is misplaced because the Seventh Circuit's concern for judicial economy involved the premature filing of lawsuits pending the finality of the underlying state administrative proceedings. *See McCartney,* 21 F.3d at 175; *see also Justin B*, 2004 WL 1673043, at *2. Moreover, the fact that Plaintiffs knew Matthew would be enrolled in the academy does not necessarily mean that the District would not file a state or federal lawsuit challenging the hearing officer's decision on or before January 19, 2010. *See* 20 U.S.C. § 1415(i)(2)(A). Based on the importance of the administrative decision's finality in determining the limitations period, the District's argument fails under established Seventh Circuit precedent. *See McCartney,* 21 F.3d at 175.

## II.     Reasonable Attorney's Fees

On March 5, 2010, Plaintiffs' counsel submitted a fee petition to the CPS for attorney's fees associated with the due process hearing and enforcement of the hearing officer's decision in the amount of $85,216.03. (Pls.' Stmt. Facts ¶ 24.) On May 20, 2010, Plaintiffs' counsel filed a supplemental fee petition for attorney's fees in the amount of $1,140.00 bringing the total to $86,356.03. (*Id*. ¶ 26.) The District argues that Plaintiffs' fee petitions are unreasonable, and thus the Court should reduce the amount Plaintiffs seek to $58,562.03.

"The IDEA contains a fee-shifting provision that permits an award of attorneys' fees to a prevailing party," which states "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." *Linda T.,* 417 F.3d at 707; *see also* 20 U.S.C. § 1415(i)(3)(B). Courts apply the same principles applicable to attorney's fees awards for civil rights cases under 42 U.S.C. § 1988 to IDEA cases. *See Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U,* 109 F.3d 1250, 1253 n.2 (7th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). When determining whether attorney's fees are reasonable, the Court considers the lodestar figure, namely, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Enoch v. Tienor,* 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433). As the Seventh Circuit instructs, the "lodestar figure is the 'starting point' and "[o]nce that figure is determined, the court may consider other factors set out in *Hensley*," which "include whether the documentation of the hours is adequate and whether 'billing judgment' was used." *Enoch,* 570 F.3d at 823-34. In addition, the "Supreme Court has said that 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Linda T.,* 417 F.3d at 708 (quoting *Hensley*, 461 U.S. at 436). The party seeking attorney's fees has the burden of proving the reasonableness of both the hourly rates and the amount of hours expended. *See Hensley,* 461 U.S. at 437. Finally, federal district courts have considerable discretion in awarding attorney's fees. *See Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010); *see also Hensley*, 461 U.S. at 437.

Here, the District does not dispute that Plaintiffs are the prevailing party under the circumstances. Also, the District does not dispute that the $300 per hour rate charged by Plaintiffs' attorneys Deborah Pergament and Mary Mulae is reasonable based on their background and experience. Instead, the District argues that counsel spent an unreasonable amount of time to prepare and draft the due process request and closing brief. Further, the District challenges other fee petition entries as non-recoverable. The Court addresses the District's arguments in turn.

### A.  Due Process Complaint

The District first argues that the 13.5 hours billed for drafting the due process complaint is excessive in light of the ISBE guidelines and the level of counsels' experience. *See Gastineau,* 592 F.3d 748-49 ("The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case."). In other words, the District maintains that drafting the due process complaint was not a difficult task for Plaintiffs' counsel, who are experienced IDEA attorneys.

To support its argument, the District maintains that the due process complaint is a straight-forward document and points to 23 Ill. Admin. Code § 226.570(a)(1)-(6), which sets out the due process complaint's requirements:

> (1) A statement that a responsible public entity has violated a requirement of Part B of the IDEA, 34 CFR, Article 14 of the School Code, or this Part;
>
> (2) The facts on which the statement is based;
>
> (3) The signature and contact information for the complainant;
>
> (4) The names and addresses of the students involved (and the names of the schools of attendance), if known;
>
> (5) A description of the nature of the problem of the child, including the facts relating to the problem; and
>
> (6) A proposed resolution of the problem to the extent known and available to the party at the time the complaint is filed.

23 Ill. Admin. Code § 226.570(a)(1)-(6). The District also presents evidence of other fee petitions in which counsel billed an average of 3.5 hours for the drafting and editing of due process complaints. (*See* Def.'s Stmt. Facts ¶¶ 39-40.) Plaintiffs, however, contest the accuracy of the District's statement that 3.5 hours is the average explaining that these cases are not comparable to Matthew's case because of the complexity and scope of Matthew's situation.

Plaintiffs specifically set forth a comparable case in which the district court awarded the full fee request. *See Jessica P. v. Board of Educ.*, 05 C 0005 (N.D. Ill. Nov. 30, 2005). A review of the *Jessica P.* fee petition reveals that her counsel charged 3 hours to draft the due process complaint and billed another 1.50 hours for updating the due process complaint. (R. 22-2, Pls.' Ex. Q, at 4, 2/9/04 entries.) Although Matthew's case was complicated and counsel's efforts were undisputedly successful, *see Linda T.,* 417 F.3d at 708, Plaintiffs have failed in their burden of establishing that the 13.5 hours counsel expended in drafting the due process complaint is reasonable especially in light of the *Jessica P.* fee petition and the facts in the record. *See Hensley,* 461 U.S. at 437. The Court therefore deducts 5 hours – or $1,500.00 – to reflect a total of 8.5 hours for the drafting and editing the due process complaint.

### B. Closing Brief

The District also objects to Plaintiffs' request for $22,170 representing 73.9 hours to research and draft their closing brief to the hearing officer. In particular, the District maintains that the Illinois Administrative Code does not contemplate written closing briefs and the submission of closing briefs is within the hearing officer's discretion. The District further argues – without any citation to legal authority or the record – that Plaintiffs should not have billed more than 5 hours for this task.

Meanwhile, the *Jessica P.* fee petition indicates that counsel billed at least 32.5 hours for the closing brief in that comparable matter. (R. 22-2, Pls.' Ex. Q, at 14-15, 7/31/04, 8/3/01, 8/04/04, 8/05/04 entries.) Outside of the *Jessica P.* fee petition, however, Plaintiffs have failed to submit additional support for the 73.9 hours, and thus have failed in their burden of establishing that these hours are reasonable under the circumstances. *See Dupuy v. McEwen,* 648 F.Supp.2d 1007, 1016 (N.D. Ill. 2009) (movant has "the burden of justifying the fees requested") (citation omitted). Based on the record, the *Jessica P.* fee petition for comparable work, the complicated issues involved, and the degree of success counsel achieved in this matter, *see Linda T.,* 417 F.3d at 708, the Court deducts 28.9 hours – or $8,670.00 – to reflect a total of 45 hours for researching and drafting the closing brief.

### C. Work Relating to IEP Meetings

Next, the District argues that fees related to IEP team meetings are not recoverable. To clarify:

> Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

*Linda T.,* 417 F.3d at 709; 20 U.S.C. § 1415(i)(3)(D)(ii). The District specifically points to January 13, 2010 billing entries for a total of 5.2 hours regarding an IEP meeting that took place after the hearing officer's September 21, 2009 decision.

Plaintiffs, on the other hand, maintain that this January 13, 2010 IEP meeting was not only the annual review of Matthew's IEP, but was also convened as a result of the hearing officer's decision. More specifically, Plaintiffs point to the ISBE due process coordinator's letter to the CPS concerning compliance with the hearing officer's decision in arguing that the changes in the placement could only be implemented through an IEP meeting. (R. 22-1, Ex. F, 11/2/09 letter.) Indeed, because the meeting was convened as a result of the administrative proceeding so that therapeutic recreation services would be included in Matthew's IEP, along with the need for Matthew's annual IEP review, half of the billed fees are reasonable and recoverable under the circumstances. (*See* 14-1, Def.'s Summ. J. Brief, at 11-12; Def.'s Stmt. Facts ¶ 10.) The Court thus deducts 2.6 hours, or $780.00, reflecting the hours billed regarding the implementation of the hearing officer's decision in relation to the therapeutic services.

### D. Attorney's Fees Unrelated to Hearing Officer's Decision

Further, the District argues that counsel cannot recover fees unrelated to the hearing officer's decision, namely, the 4.8 hours billed in relation to Matthew's therapeutic recreational and physical therapy. Plaintiffs admit that the hearing officer did not order physical therapy services, but that the billed hours for the therapeutic recreational therapy relates to a formal complaint regarding the District's non-compliance with the hearing officer's decision. Based on the record, the hours billed in enforcing the hearing officer's decision relating to

Matthew's therapeutic recreational therapy are recoverable for a total of 3.4 hours. (R. 22-1, Pls.' Exs. E, F, G & H; Def.'s Stmt. Facts ¶ 34; Pls.' Stmt. Facts ¶ 23.) As such, the Court deducts 1.4 hours, or $420.00, from Plaintiffs' fee petition for the hours billed concerning physical therapy.

### E. Mediation/Resolution Fees

The District also contends that Plaintiffs cannot recover 1.3 hours of attorney's fees related to mediation or resolution pursuant to 20 U.S.C. § 1415(i)(3)(D)(iii). (*See* Def.'s Stmt. Facts ¶ 35.) Indeed, although the IDEA allows attorney's fees for work performed in any "action or proceeding," the IDEA specifically excludes resolution meetings from the scope of that definition. *See* 20 U.S.C. § 1415(i)(3)(D)(ii), (iii) ("A [resolution meeting] shall not be considered ... a meeting convened as a result of an administrative hearing or judicial action; or ... an administrative hearing or judicial action."); *see also* 34 C.F.R. § 300.517(c)(2)(iii).

In response to the District's argument, Plaintiffs maintain that their attorney billed .3 hours for scheduling the resolution session and .9 hours concerning records the CPS requested, that were only incidental to the resolutions sessions, and thus the billed time is recoverable. Plaintiffs, however, do not support their argument with any legal authority that these tasks are recoverable under the IDEA nor do they challenge the District's statement of facts with any citation to the evidentiary record. *See Cichon v. Exelon Generation Co., L.L.C.,* 401 F.3d 803, 809-10 (7th Cir. 2005) (courts may disregard Rule 56.1 responses that do not properly cite to the record). Because Plaintiffs have failed in their burden of establishing that these hours are reasonable and recoverable, *see Hensley,* 461 U.S. at 437, the Court deducts the 1.3 hours billed, or $390.00, in relation to a resolution meeting.

### F. Non-Legal Work

Next, the District argues that there are multiple entries for clerical work performed by senior attorneys at $300 per hour. The District specifically points to a total of 2.2 hours concerning the transmittal of the due process complaint; emails to the clients, litigation team members, and the hearing officer about scheduling issues; emails to the ABA providers regarding their testimony; and requests for hearing transcripts. The Court agrees that these entries are non-legal in nature because these tasks do not require any legal expertise or background, but instead are tasks a legal assistant could handle with ease. The Court thus reduces the hourly rate for this non-legal work to $75 an hour representing the undisputed legal assistant hourly wage. (*See* Pl.'s Stmt. Facts ¶ 28.) The Court thereby deducts $495.00 from Plaintiffs' fee petition.

### G. Duplicate Entries

The District also objects to four entries in the supplemental fee petition filed on May 5, 2010 as duplicative. Plaintiffs agree that these entries are duplicates, and thus the Court deducts .8 hours for a total of $240.00 from the fee petition.

## III. Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on the Court's attorney's fees award. "[P]rejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.,* 329 F.3d 557, 572 (7th Cir. 2003). "The basic purpose of prejudgment interest is to put a party in the position it would have been in had it been paid immediately. It is designed to ensure that a party is fully compensated for its loss." *American Nat'l Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc*., 325 F.3d 924, 935 (7th Cir. 2003); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.,* 515 U.S. 189, 195, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that

an injured party is fully compensated for its loss."). In short, "prejudgment interest should not be thought of as a windfall," instead, "it is simply an ingredient of full compensation that corrects judgments for the time value of money." *Matter of P.A. Bergner & Co.,* 140 F.3d 1111, 1123 (7th Cir. 1998).

Here, Plaintiffs are seeking prejudgment interest on the attorney's fees award to compensate counsel for the delay in the payment of their fees. Although the parties do not cite – nor has the Court found – any controlling legal authority regarding prejudgment interest awards in the context of IDEA attorney's fees claims, other courts have concluded that prejudgment interest is appropriate in such cases subject to the court's discretion. *See, e.g., Termine v. William S. Hart Union High Sch. Dist.,* 288 Fed.Appx. 360, 363 (9th Cir. July 24, 2008) (unpublished); *Kaseman v. District of Columbia,* 329 F.Supp.2d 20, 28 (D.D.C. 2004); *see also Holbrook v. District of Columbia,* 305 F.Supp.2d 41, 46 (D.D.C. 2004) ("The phrase 'any money judgment' in [28 U.S.C.] § 1961(a) includes a judgment awarding attorney's fees and other costs.").

In response to Plaintiffs' request for prejudgment interest, the District argues that because it made a reasonable effort to settle Plaintiffs' attorney's fees request and that there is no evidence of bad faith or unreasonable delay on its part, the Court should deny Plaintiffs' request for prejudgment interest. The Seventh Circuit, however, has rejected the similar argument "that good faith mitigates a losing party's obligation to pay the appropriate measure of prejudgment interest." *See First Nat'l Bank of Chicago v. Standard Bank & Trust,* 172 F.3d 472, 480 (7th Cir. 1999). Accordingly, the District's argument that its good conduct excuses it from paying prejudgment interest fails because the purpose of prejudgment interest is to correct judgments for the time value of money, not to reward or punish a particular litigant. *See id.* at 480-81; *Matter of P.A. Bergner,* 140 F.3d at 1123. Based on the presumption in favor of prejudgment interest and the facts in this matter, *see McRoberts Software,* 329 F.3d at 572, the Court, in its discretion, awards Plaintiffs' prejudgment interest on the attorney's fees award to compensate counsel for the delay in payment. Because there is no statutory interest rate, the Court awards prejudgment interest based on the average prime rate for the appropriate time period.[1] *See First Nat'l Bank,* 172 F.3d at 480 ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.").

---

[1] The prime rate from January 2009 through June 2010 has been 3.25.
http://www.federalreserve.gov/releases/h15/data/Monthly/H15_PRIME_NA.txt